## ENTERPRISE IRRIGATION DISTRICT ET AL. *v.* FARMERS MUTUAL CANAL COMPANY ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 48.  Argued January 22, 23, 1917.—Decided March 6, 1917.

In a suit to determine the relative rights of the parties to divert water for irrigation from a stream in Nebraska, the state court decided that superiority of the defendant's appropriation had been conclusively established against the plaintiff, consistently with due process, in proceedings before a state board, and, further and independently, that the plaintiff, having without objection stood by and permitted the defendant to go to enormous expense in the construction of a canal and diverting works, was estopped to question the validity of the defendant's appropriation on which it relied.  The ground of estoppel being distinct, non-federal, and fairly supported by the facts, *Held*, that this court had no jurisdiction to review, although the state board's adjudication was challenged under the Fourteenth Amendment.

When the judgment of a state court is placed upon two grounds, one involving a federal question and the other not, the jurisdiction of this court depends upon whether the non-federal ground is independent of the federal ground and also broad enough to sustain the judgment; if so, the judgment does not depend upon the decision of any federal question, and this court has no power to disturb it.

Where the non-federal is so interwoven with the federal ground as not to be independent, or, standing alone, is not of sufficient breadth to sustain the judgment, the jurisdiction of this court attaches.

Where the non-federal ground is so certainly unfounded that it properly may be regarded as essentially arbitrary, or a mere device to prevent a review of the decision upon the federal question, the judgment rests upon the latter and may be reviewed here.

But, where the non-federal ground has fair support, this court may not inquire whether the decision upon it is right or wrong.

Questions of state law do not engage the due process clause of the Fourteenth Amendment.

Writ of error to review 92 Nebraska, 121, dismissed.

THE case is stated in the opinion.

*Mr. Harry N. Haynes*, with whom *Mr. Thomas M. Morrow*, *Mr. William Morrow* and *Mr. Harold D. Roberts* were on the brief, for plaintiffs in error.

*Mr. Fred A. Wright* and *Mr. Will R. King*, with whom *Mr. Carl C. Wright* was on the briefs, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

In form this was a suit to determine the relative rights of the parties to divert the waters of the North Platte River, in western Nebraska, for purposes of irrigation, but the only controversy disclosed was over the extent and priority of the right of the Farmers Mutual Canal Company, the principal defendant. Another defendant, the Tri-State Land Company, was interested as a stockholder of the canal company, and need be noticed only in another relation.

The canal company claimed a right to divert through its canal 1,142$^6/_7$ cubic feet of water per second of time— usually spoken of as second feet—under an appropriation dating from September 16, 1887, and the other parties severally claimed rights to divert specific amounts under later appropriations. In so far as the canal company's claim exceeded 28 second feet with a priority dating from September 16, 1887, it was challenged on the grounds that the appropriation upon which it rested had not been perfected with reasonable diligence; that this was the situation when the appropriations under which the others were claiming were made and perfected; that if the claim subsequently was enlarged it could not as to the enlargement take priority over the intervening rights of others, and that if it originally covered 1,142$^6/_7$ second feet, which was disputed, all right to more than 28 feet had

been lost by non-user. But the canal company asserted the validity of its entire claim, denied any loss by lack of diligence or non-user, and contended, among other things, that the State Board of Irrigation had sustained its entire claim in 1897 when the board was engaged under the state law (Laws 1895, c. 69, §§ 16–27) in adjudicating claims to the waters of the North Platte River, and that the other parties were estopped from questioning its right by reason of their attitude and conduct after 1904 when its predecessor in interest was completing the canal and diverting works at enormous cost. The other parties denied that there was any ground for an estoppel and insisted that, consistently with the due process and equal protection provisions of the Fourteenth Amendment, the claimed adjudication by the State Board of Irrigation could not be treated as in any way binding upon them, because (a) the law under which the board acted made no provision for notice and (b) the board had proceeded without notice and without affording an opportunity to be heard. Other contentions were advanced, but no purpose would be served by stating them here.

It was conceded that during portions of the irrigation season the flow of the stream had not been sufficient to satisfy all of these claims and that the State Board of Irrigation recently had recognized the canal company's claim by refusing to restrict its diversion in time of low water to less than 1,142$^6/_7$ second feet.

The cause was submitted on the pleadings and on a "stipulation of facts" covering 84 printed pages and containing much that was purely evidential and not in the nature of a statement of ultimate facts.

The stipulation disclosed that the canal company's canal was about 80 miles in length, was completed in October, 1910, and was capable of irrigating 80,000 acres; that in 1895 it had cost about $100,000 and was capable of irrigating 30,000 acres; that by reason of financial diffi-

culties, a foreclosure suit and other litigation the work of construction was practically suspended from 1895 to 1905; that the work was actively resumed in 1905 and continued with vigor until October, 1910, when it was completed; that the cost of the work from 1905 to 1910 was in excess of $1,500,000, and more than $950,000 of this was expended before August, 1909, when this suit was begun; that the work done after 1905 included a needle-dam across the river costing $27,869.20, an additional head-gate of concrete and reinforced steel costing $52,113.20, and a waste-gate or spillway of similar construction costing $42,253.46; and that the number of acres actually reclaimed and irrigated by the canal was being rapidly increased, being less than 2,000 acres in 1905 and 20,000 acres in 1910.

The trial court held that the canal company's right, although prior in time, did not extend to more than 28.57 second feet of the water, and entered a decree to that effect. An injunction was also granted restraining the company from taking more than was thus accorded to it. In the Supreme Court the decree was reversed and the suit was dismissed on the merits so far as it concerned the canal company and the Tri-State Land Company, and without prejudice in respect of any controversy between the other parties. 92 Nebraska, 121.

The Supreme Court, recognizing that the case was of great importance to the parties and to all who were interested in irrigated lands in the State, and that any decision therein would almost inevitably result in serious loss to one or more of the parties, proceeded in a painstaking way to state, discuss and determine all the questions presented. Among other things, it sustained the authority of the State Board of Irrigation under the Act of 1895 to adjudicate claims like those to the waters of the North Platte River; described the board's power in that regard as quasi-judicial and its adjudications as final un-

less appealed from to the district court; held that the right to due notice and a reasonable opportunity to be heard was implied in the act; and reaffirmed its decision in *Farmers Canal Co.* v. *Frank*, 72 Nebraska, 136, made in 1904, that the board's action upon the canal company's claim amounted to an unconditional adjudication of the extent and priority of the claim and that a leading purpose of the Act of 1895 was to create a state board "whose records would evidence the priorities of title to the appropriation of water in such a public manner that no one might be misled."

As respects the notice actually given to the other parties, the opportunity which they had for opposing or contesting the canal company's claim before the board, and the knowledge of the board's action which they reasonably should be regarded as possessing, the court found, in substance, that before the board began to inquire into the claims to the waters of the North Platte it gave due notice of its purpose so to do; that under that notice all the parties to this suit, or their predecessors in interest, appeared before the secretary of the board, at the times and places indicated in the notice, and presented such evidence as they deemed appropriate in support of their respective claims—the evidence being preserved and becoming a part of the record in that proceeding; that the board's printed rules, which were duly brought to the attention of all the parties, permitted any claimant to contest the claim of another, but no one sought to contest the canal company's claim; that in ordinary course, after the evidence was presented, the claims were adjudicated—a separate opinion upon each claim being prepared by the secretary, who was the State Engineer, and afterwards adopted by the board; that each claimant was specially notified of the decision upon his own claim, but not of the decisions upon the claims of others; that the decision upon the canal company's claim, in addition to being en-

tered in the records of the state board, was shown in a list of established claims regularly appearing in the biennial reports of the board which the State required to be made and published, and was recorded in 1905 in the office of the county clerk of the county where the appropriation was made.

In these circumstances the court concluded that the contention that the board had proceeded without adequate notice to the parties, or without affording them a reasonable opportunity to be heard, had no real foundation. It also concluded that, in view of the nature of the enterprise, the large expenditures required and the circumstances surrounding the temporary suspension of the work, the contention that part of the canal company's claim had been lost through lack of diligence or non-user was highly inequitable and untenable.

Then coming to the question of estoppel the court held that, even if the other questions were decided against the canal company, it was entitled to prevail upon the ground that its adversaries were estopped by reason of their own conduct. In the course of its opinion the court referred at length to the admissions in the pleadings and stipulation and found, as matter of fact, that shortly after the decision in *Farmers Canal Co.* v. *Frank, supra,* the Tri-State Land Company, the canal company's immediate predecessor in interest, actively took up the work of completing the canal and diverting works and proceeded therewith in good faith and with vigor, relying upon that decision and the state board's adjudication and openly claiming the amount of water and priority specified in the latter, and that the other parties, with knowledge of that claim and situation, made no claim of superior right to the water, but remained silent for four years while the work, which the court described "as comparable only to the construction of a railroad," was being carried to completion at enormous cost and the water was being

diverted and used through the canal in increasing volume. And, having thus passed upon the questions of fact, the court said:

"Under these circumstances, and having this knowledge, it would be contrary to the plainest principles of equity if plaintiffs might stand silently by, seeing the defendants engage in such a monumental work under claim of right, and utter no word of warning as to their own claims, which, if eventually established, would deprive defendants of the water which the canal was built to carry, condemn the whole enterprise to failure, and result in the absolute loss of the money expended. It would be manifestly inequitable and unjust to allow the plaintiffs, after the works were practically finished and the money expended, to insist upon claims which, had they been asserted in good time, would at least have put the defendants upon their guard and have given them cause to pause and hesitate in their expenditures until the validity of their title had been determined."

Concisely stated, the assignments of error complain that the Supreme Court infringed the due process and equal protection provisions of the Fourteenth Amendment, first, by giving decisive effect to the state board's decision, instead of holding that it was made without lawful notice or opportunity to be heard and therefore was void, and, second, by misconceiving or misapplying the statute and common law of the State in disposing of other questions.

Our jurisdiction is disputed and must be considered, as, indeed, it should be, even if not challenged. As has been shown, several questions were presented to the Supreme Court and all were considered. One was whether the state board's decision could be given any conclusive effect consistently with the due process and equal protection clauses of the Fourteenth Amendment, and another was whether the defense of estoppel *in pais* was well grounded. The first was plainly a federal question and the other as

plainly non-federal. Both were resolved in favor of the canal company. The other questions, none of which was federal, may be put out of view in this connection. Thus we are concerned with a judgment placed upon two grounds, one involving a federal question and the other not. In such situations our jurisdiction is tested by inquiring whether the non-federal ground is independent of the other and broad enough to sustain the judgment. Where this is the case, the judgment does not depend upon the decision of any federal question and we have no power to disturb it. *Hammond* v. *Johnston*, 142 U. S. 73, 78; *Eustis* v. *Bolles*, 150 U. S. 361; *Berea College* v. *Kentucky*, 211 U. S. 45, 53; *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 112, 116; *Gaar, Scott & Co.* v. *Shannon*, 223 U. S. 468; *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 610. It has been so held in cases where the judgment was rested upon a federal ground and also upon an estoppel. *Pierce* v. *Somerset Ry.*, 171 U. S. 641, 648; *Lowry* v. *Silver City Gold & Silver Mining Co.*, 179 U. S. 196.[1] But where the non-federal ground is so interwoven with the other as not to be an independent matter, or is not of sufficient breadth to sustain the judgment without any decision of the other, our jurisdiction is plain. See *Moran* v. *Horsky*, 178 U. S. 205, 208; *Creswill* v. *Knights of Pythias*, 225 U. S. 246, 261. And this is true also where the non-federal ground is so certainly unfounded that it properly may be regarded as essentially arbitrary or a mere device to prevent a review of the decision upon the federal question. *Leathe* v. *Thomas*, 207 U. S. 93, 99; *Vandalia R. R. Co.* v. *South Bend, ibid.*, 359, 367. But, where the non-federal ground has fair support, we are not at liberty to inquire whether it is right or wrong, but must accept it, as we do other state decisions of non-federal questions. *Murdock* v. *Memphis*, 20 Wall. 590, 635; *Eustis* v. *Bolles, supra*, p. 369;

[1] See also *Sherman* v. *Grinnell*, 144 U. S. 198, 202; *Gillis* v. *Stinchfield*, 159 U. S. 658, 660; *Hale* v. *Lewis*, 181 U. S. 473, 479–480.

*Leathe* v. *Thomas, supra; Arkansas Southern ·R. R. Co.* v.
*German National Bank,* 207 U. S. 270, 275.

It does not, as we think, admit of doubt that the estoppel *in pais* is made an independent ground of the judgment. Instead of being interwoven with the validity of the state board's adjudication, which is the other ground, it is distinct from it, and is so treated in the court's opinion. In taking up the question of estoppel, as also in concluding its discussion of the subject, the court plainly shows that it is then indulging an assumption that the other ground is not tenable. True, the board's proceedings and adjudication are referred to as having some bearing upon the good faith of the canal company and upon the knowledge which the other parties had of that company's claim, but in this the court neither departs from the assumption indulged nor confuses the two grounds of the judgment. Even if invalid, the board's proceedings and adjudication could well have a real bearing upon the matters indicated.

In view of the facts before recited we think it cannot be said that the ruling upon the question of estoppel is without fair support or so unfounded as to be essentially arbitrary or merely a device to prevent a review of the other ground of the judgment. We therefore are not at liberty to inquire whether the ruling is right or wrong. And it may be well to add that the question did not originate with the court. It was presented by the pleadings, was in the minds of the parties when the stipulation was made, and was dealt with by counsel and court as a matter of obvious importance.

It is not urged, nor could it well be, that as a ground of decision the estoppel is not broad enough to sustain the judgment.

The claim that the court in disposing of some of the questions, including that of the estoppel, misconceived or misapplied the statutory and common law of the State and thereby infringed the due process and equal protection

clauses of the Fourteenth Amendment requires but brief notice. The due process clause does not take up the laws of the several States and make all questions pertaining to them constitutional questions, nor does it enable this court to revise the decisions of the state courts upon questions of state law. *Sayward* v. *Denny*, 158 U. S. 180, 186; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 112; *Castillo* v. *McConnico*, 168 U. S. 674, 683–684. The questions presented, other than those relating to the validity of the state board's adjudication, all turned exclusively upon the law of the State, and the state court's decision of them is controlling. *Preston* v. *Chicago*, 226 U. S. 447; *St. Louis & Kansas City Land Co.* v. *Kansas City*, 241 U. S. 419, 427; *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 116. The reference to the equal protection clause evidently is inadvertent, for there is no claim of unwarranted or arbitrary discrimination.

It results from what has been said that the judgment is one which is not open to review by this court.

*Writ of error dismissed.*