Guadalupe BELTRAN, et al., Plaintiffs,

v.

STATE OF CALIFORNIA; United
Farm Workers of America,
AFL–CIO, et al., Defendants.

Civ. No. 83–722–JLI(I).

United States District Court,
S.D. California.

Sept. 19, 1985.

Scott A. Wilson, Littler, Mendelson, Fastiff & Tichy, San Diego, Cal., Robert F. Gore, Nat. Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs.

Kathy Christian, Agr. Labor Relations Bd., John Van de Kamp, Atty. Gen., State of Cal., and Carlos Alcala, Sacramento, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

Presently before the court are cross-motions for summary judgment on the issue of the constitutionality of § 1153(c) of the California Labor Code. Plaintiffs, agricultural workers for Sun Harvest, Inc., contend that this section violates their first amendment free speech and associational rights, and has a disparate impact upon

them, as persons of Mexican-American or hispanic origin. Defendants and the California Agricultural Labor Relations Board (ALRB) as amicus curiae, contend there is no constitutional violation and request judgment on this issue in favor of defendants. Having considered the pleadings and exhibits on file, the arguments of counsel, and for the reasons stated below, the court finds § 1153(c) of the California Labor Code unconstitutional as an abridgment of the first amendment to the United States Constitution.

## I.

The statutory background and facts as stipulated to by counsel are summarized below.

## A.

In amending the National Labor Relations Act (NLRA) in 1947, Congress specifically excluded "agricultural laborers" from the provisions of the Act, and left this area of labor relations to the states. *See* 29 U.S.C. § 152(3). Until 1975, the California State Legislature allowed labor relations with respect to this exempted area to develop under the common law of the state. In order to clarify and codify the common law as it developed, the Agricultural Labor Relations Act (ALRA) was enacted, and was in many respects parallel to the NLRA. It is a variance from the NLRA added to the ALRA which is at issue here.

Through its amendments to the NLRA, Congress essentially provided a scheme whereby employers and their employees, through a collective bargaining representative, could enter into Union Shop arrangements. That is, employees covered by a collective bargaining agreement containing a Union Shop clause must join the union, but may be terminated by the employer at the request of the union only if the employee has failed to pay dues or equivalent fees. In this regard, 29 U.S.C. § 157 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 158(a)(3) allows discrimination in employment by an employer with regard to union membership only if a union shop clause has been agreed upon:

[N]othing in this [Act] shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein ... *Provided further*, that no employer shall justify any discrimination against an employee for nonmembership in a labor organization ... if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. ...

Thus, the federal scheme restricts employer discrimination against an employee solely to nonpayment by the employee of union dues and initiation fees. With the enactment of § 1153(c), the California legislature, as noted above, followed the NLRA model quite closely. However, in one major respect, the legislature apparently felt it necessary to give expanded control to the union, were there to be a union shop clause in a collective bargaining agreement. To this end, § 1152 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities

except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of continued employment as authorized in subdivision (c) of section 1153.

Section 1153(c) in part provides:

Nothing in this part ... shall preclude an agricultural employer from making an agreement with a labor organization ... to require as a condition of employment, membership therein ... For purposes of this chapter, membership shall mean the satisfaction of all reasonable terms and conditions uniformly applicable to other members in good standing; provided, that such membership shall not be denied or terminated except in compliance with a constitution or bylaws which afford full and fair rights to speech, assembly, and equal voting and membership privileges for all members, and which contain adequate procedures to assure due process to members and applicants for membership.

As is apparent from the wording of the California statute, more than mere payment of dues is required: good standing by the employee, as determined by the union, is necessary in order to retain employment.

### B.

In this case, plaintiffs were covered by a collective bargaining agreement entered into between the United Farm Workers and Sun Harvest, Inc., a California corporation, which contained a union shop clause as permitted by § 1153(c):

Union membership shall be a condition of employment. Each worker shall be required to become a member of Union immediately following five (5) continual days after the beginning of employment, or five (5) days from the date of signing of this agreement, whichever is later; and to remain a member of Union in good standing. *Union shall be the sole judge of the good standing of its members.* Any worker who ... has been determined to be in bad standing by Union pursuant to the provisions of the Union's constitution, shall be immediately discharged....

Stipulation of Facts for purposes of summary judgment (quoting Sun Harvest—UFW Collective Bargaining Agreement, Article 2, ¶ A, February, 1976) (emphasis added).

In January 1979, this collective bargaining agreement expired, and upon failure to reach a new agreement, the UFW commenced concerted action against the employer, Sun Harvest. At the onset of the strike, the union apparently enjoyed 100% participation of Sun Harvest workers covered by the expired agreement. Each of the six plaintiffs as well supported the strike. However, each of the six plaintiffs crossed picket lines within three to six months after the strike began.

The UFW believes these actions violated its constitution which prohibits crossing picket lines, and working without authorization during a strike, and the plaintiffs were tried by UFW Ranch Committees. Each was found guilty, and subsequently expelled from the union. The UFW then requested Sun Harvest terminate plaintiffs, and Sun Harvest complied. From this point on, plaintiffs have attempted to have their constitutional claims resolved, but have been faced with a procedural nightmare.

In February 1980, the plaintiffs pursued relief both in the Superior Court for the Imperial County, and in administrative proceedings before the ALRB. In the state court action, plaintiffs sought declaratory and injunctive relief as to the constitutionality of § 1153(c); the Superior Court declined relief on the ground that exclusive jurisdiction was vested with the ALRB. Accordingly, that court did not dismiss the action, but waited for a narrowing construction of § 1153(c).

Concurrently, plaintiffs proceeded with unfair labor practice actions before the ALRB. Plaintiffs George, Michael and Donald Moses, together with Beltran and Salinas, alleged the ALRA was violated by discharging plaintiffs on a discriminatory and selective basis, without due process of

law, and for conduct which occurred when there was no collective bargaining agreement. Hearings were held in October 1980, and in September 1981, a decision was rendered finding the Ranch Committee trials violated due process and were thus in violation of the ALRA.

These plaintiffs also filed unfair labor practice charges contending that § 1153(c) was overbroad in its membership requirements; the General Counsel for the ALRB denied the charges on the grounds that the state legislature did not intend to make such a discharge an unfair labor practice for reasons other than failure to pay dues and fees. In its consideration of the issue, however, the Board upheld the validity of § 1153(c) on the ground that the union rule requiring members to respect picket lines was reasonable within the meaning of § 1153(c). While rejecting plaintiffs' contentions, the Board did find the Ranch Committee trials violated due process, and ordered reinstatement and back pay.

Plaintiff Pasillas proceeded in like fashion, and met with like results as to the formal membership requirements of the collective bargaining agreement. However, Pasillas was not afforded the same relief because it was found he had failed to exhaust internal union remedies provided in the UFW constitution. The ALRB decision is reported at 8 ALRB No. 103 (1982). All plaintiffs sought review of the ALRB's decision by the California Court of Appeal. That court rendered a decision in Pasillas' appeal on May 24, 1984. The court rejected Pasillas' constitutional claim on the basis that there was no state action. *Pasillas v. ALRB*, 156 Cal.App.3d 312, 202 Cal.Rptr. 739 (1984). The court of appeal upheld the ALRB's rulings on all other issues. That court denied Pasillas' petition for rehearing by order entered June 20, 1984. The California Supreme Court denied hearing by order entered August 8, 1984. Pasillas filed a notice of appeal to the United States Supreme Court on November 1, 1984. Pasillas filed his jurisdictional statement November 6, 1984. By order entered January 14, 1985, the Court dismissed the appeal for want of jurisdiction. *Pasillas v. ALRB*,

— U.S. ——, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985).

On May 13, 1985, the California Court of Appeal summarily dismissed the appeals from the order of the ALRB filed by plaintiffs George, Michael and Donald Moses, with Beltran and Salinas. The court exercised its prerogative to deny the petition for review without elaboration. *Moses v. ALRB*, 4 Civil No. 31129, D000959 (Cal. App. May 13, 1985).

The plaintiffs met with similar problems as they pursued their Imperial County court actions; November 1980 and March 1982 motions for summary judgment were denied on the basis that exclusive jurisdiction rested with the ALRB, and review by the California Court of Appeals and Supreme Court were summarily denied.

All plaintiffs have returned to work at Sun Harvest with the exception of Pasillas.

## II.

### A.

■ Pursuant to this court's request, the parties have submitted additional briefing on the issue of the effect of the Supreme Court's dismissal on the matters currently before the court. Defendants United Farm Workers and ALRB contend the Supreme Court's dismissal for want of jurisdiction is a binding determination on the merits of Pasillas' constitutional claim, and the decision is binding precedent necessitating denial of the constitutional claims of the remainder of the plaintiffs. The court finds defendants' arguments unpersuasive.

In determining the precedential or res judicata effect of a summary disposition by the Supreme Court, this court must determine whether the arguments determinative of the issues in the instant case were necessarily decided by the Court in reaching its decision. "[A]lthough summary dispositions are decisions on the merits, the decisions extend only to 'the precise issues presented and necessarily decided by those actions.'" *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 499, 101 S.Ct.

2882, 2888, 69 L.Ed.2d 800 (1981) (quoting *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977)). In *Hopfmann v. Connolly,* —— U.S. ——, 105 S.Ct. 2106, 85 L.Ed.2d 469 (1985), the Supreme Court vacated a decision by the First Circuit that relied upon a summary dismissal for want of jurisdiction to foreclose a constitutional challenge to a Massachusetts statute. The Court distinguished a summary disposition for want of a substantial federal question, which requires a determination on the merits, from a dismissal for want of jurisdiction, stating:

> [b]ecause the Court dismissed the appeals for lack of appellate jurisdiction, we had no occasion to adjudicate the merits of the constitutional questions presented in the jurisdictional statements.

105 S.Ct. at 2107.

Similarly, in *Pasillas,* the U.S. Supreme Court dismissed the appeal for want of jurisdiction. Under the reasoning of *Hopfmann,* the Court had no opportunity to rule on the merits of the constitutional challenge raised by Pasillas.

Defendants argue, however, the jurisdictional defect in the appeal presented by *Pasillas* was the failure to demonstrate state action. The court finds this argument unpersuasive for three reasons. First, the state action arguments were presented to the Supreme Court by the defendants in their motions to that court to either dismiss or affirm. The refusal of the U.S. Supreme Court to either dismiss or affirm creates a negative implication that the Court did not necessarily decide state action was not present.

■ Second, and more fundamentally, a decision that no state action is present is, itself, a decision on a federal question. When the Court has ruled in the past that particular cases did not present state action, the Court has ruled on the merits of the case, and has not dismissed for lack of jurisdiction. *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

Therefore, a determination that state action is not present does not lead to the conclusion that appellate jurisdiction is not present under 28 U.S.C. § 1257(2), and, a fortiori, a dismissal for want of jurisdiction does not necessarily involve a determination that no state action was shown.

Defendants argue the question of whether state action is present in the termination agreements is so insubstantial it renders Pasillas' constitutional claim frivolous, depriving the Supreme Court of a legitimate federal question. This approach to federal question jurisdiction has been questioned. *See Bell v. Hood,* 327 U.S. 678, 682–85, 66 S.Ct. 773, 776–77, 90 L.Ed. 939 (1946). This approach is also called into doubt by the Court's unequivocal statement in *Hopfmann* that a dismissal for want of jurisdiction involved no determination on the merits of the constitutional claims presented. *See Hopfman,* 105 S.Ct. at 2107. If the Court found the presence of state action in Pasillas' case foreclosed by previous decisions, it could have dismissed for want of a substantial federal question, or summarily affirmed. Instead, the Court dismissed for want of jurisdiction, and this court will not give that dismissal the binding and precedential effect of a determination on the merits.

■ Third and finally, the court finds the Supreme Court's summary dismissal was not a determination of the merits because an independent and adequate state ground existed for the California Court of Appeal's decision.

■ 28 U.S.C. § 1257(2) grants a right of appeal to the Supreme Court of the United States from the highest state court of decision:

> where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

Pasillas challenged the constitutionality of § 1153(c) in the California Court of Appeal, and his petition for review was denied by

the California Supreme Court. If a state court's decision can rest on an independent decision involving state law, then regardless of the correctness of the state court's decision on an issue of federal law, the Supreme Court does not have jurisdiction, because the validity of the statute under the constitution of the United States is not "drawn in question," for purposes of 28 U.S.C. § 1257(2). *See generally,* C. Wright & A. Miller, Federal Practice & Procedure, §§ 4019, 4029. This principle furthers the dual objectives of preventing unnecessary determinations of constitutional questions, and maintaining the allocation of judicial power between the states and the federal government.

> Our only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights. And our power is to correct wrong judgments, not to revise opinions. We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion.

*Herb v. Pitcairn,* 324 U.S. 117, 125–26, 65 S.Ct. 459, 462–64, 89 L.Ed. 789 (1945).

■ When reviewing a decision based upon an independent and adequate state substantive ground, the Supreme Court will deny jurisdiction. *See e.g., Enterprise Irrigation District v. Farmers Mutual Canal Co.,* 243 U.S. 157, 164–65, 37 S.Ct. 318, 320–21, 61 L.Ed. 644 (1917).

In *Pasillas,* the California Court of Appeal held that Pasillas had not exhausted his internal union remedies, as required by §§ 1153(c) and 1154(b). 156 Cal.App.3d at 360–62, 202 Cal.Rptr. at 768–70. This finding alone necessitated dismissal of his unfair labor practice charges. *See id.* at 362, 202 Cal.Rptr. at 770.

Therefore, the failure to exhaust intraunion remedies provides an independent ground of state law sufficient to uphold the court of appeal's decision to affirm the ALRB's dismissal of the unfair labor practice charge filed by Pasillas. The presence

of this independent and adequate state law ground provides a third ground for this court's finding that the Supreme Court's dismissal of Pasillas' appeal was not a determination on the merits.

In short, this court finds a determination on the merits of Pasillas' constitutional claims, particularly on the issue of state action, was neither presented nor necessarily decided by the United States Supreme Court's summary dismissal of the appeal in *Pasillas v. ALRB* for want of jurisdiction. Therefore, this court declines to accept defendants' contentions that the Supreme Court's dismissal constitutes a binding decision on the merits, with res judicata effect on Pasillas' claims, and binding precedential effect on the other plaintiffs' claims.

Because this court finds the Supreme Court's dismissal for lack of jurisdiction was not a decision on the merits, the court does not address the arguments raised by plaintiffs that Pasillas made an effective reservation of his federal claims pursuant to *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

### B.

Defendants urge that even if the Supreme Court's decision in *Pasillas* is not binding precedent, the California Court of Appeal's decisions in *Pasillas* and *Moses* should preclude relitigation of the constitutional claims raised by plaintiffs in this litigation.

28 U.S.C. § 1738 mandates application of both claim preclusion, *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and issue preclusion, *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 896–98, 79 L.Ed.2d 56 (1984), to federal actions brought under 42 U.S.C. § 1983. *See also Trujillo v. County of Santa Clara,* 766 F.2d 1368, 1372 (9th Cir.1985). In deciding the preclusive effect of the California Court of Appeals decisions in *Pasillas* and *Moses,* this court must apply the preclusion

law of California. *See Marrese v. American Academy of Orthopaedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

■ California law of claim preclusion prevents litigation of claims in a second suit between the same parties if the first suit resulted in a final judgment on the merits and claims sought to be litigated in the second suit were litigated, or should have been litigated in the first suit. *See Los Angeles Branch NAACP v. Los Angeles Unified School District,* 750 F.2d 731, 737 (9th Cir.1984). This res judicata effect applies regardless of the order in which the various proceedings were commenced. *See Americana Fabrics, Inc. v. L&L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985).

■ Pasillas is the only party to this action who was also a party to the action in *Pasillas.* As noted above, in its determination of Pasillas' challenge to the ALRB's order, the court of appeal found the unfair labor practice charges brought by Pasillas were properly dismissed by the ALRB because Pasillas failed to exhaust his intra-union remedies. *See Pasillas,* 156 Cal. App.3d at 362, 202 Cal.Rptr. at 770. Although generally, a decision by the court of appeal on a petition for review of an administrative decision constitutes a final decision on the merits for purposes of res judicata under California law, *see Trujillo,* 766 F.2d at 1377, a dismissal for failure to exhaust intra-union remedies is not a decision on the merits, but is instead a dismissal for want of jurisdiction. *Holderby v. International Union of Operating Engineers, Local Union No. 12,* 45 Cal.2d 843, 846, 291 P.2d 463, 466 (1955). A dismissal for want of jurisdiction is not a decision on the merits, *Financial Indemnity Co. v. Superior Court,* 45 Cal.2d 395, 400, 289 P.2d 233, 236 (1955), and is not entitled to preclusive effect under California principles of res judicata. *Nichols v. Canoga Industries,* 83 Cal.App.3d 956, 966–67, 148 Cal.Rptr. 459, 466 (1978). Therefore, the decision by the California Court of Appeal in *Pasillas* is not entitled to claim preclusive effect in this action.

■ Nor does claim preclusion attach to the decision by the court of appeal on the merits of the claims presented by Pasillas' co-plaintiffs. California considers the parties to an action to have been the same for res judicata purposes:

> when those between whom the evidence is offered were on opposite sides in the former case, and a judgment or other determination could in that case have been made between them alone, though other parties were joined with both or either.

Cal.Civ.Pro.Code § 1920.

This court is unaware of any California authority discussing the application of § 1910 to a court's varying determination of issues involving co-plaintiffs. In the area of issue preclusion, one commentator has stated:

> [p]reclusion should be denied in multiparty cases as to findings that were necessary to the result between some parties, but that were not necessary to the result as to the party against whom preclusion is invoked.

C. Wright & A. Miller, Federal Practice & Procedure § 4421 at 202. One of the rationales behind denying preclusion in such an instance is that appellate review of the unnecessary findings may not be available to the party who is later asserted to be precluded. *See id.* at 193; Restatement (Second) of Judgments § 27 comment h (1982). As noted above, Pasillas was unable to obtain review in the United States Supreme Court, possibly because of the court of appeals' determination that he failed to exhaust his intra-union remedies; the other parties to the case, perhaps lacking the incentive of Pasillas, did not appeal. Under these circumstances, this court feels the court of appeals' determination of the claims of Pasillas' co-plaintiffs should not preclude Pasillas from bringing this action. The court finds that because the court of appeals determined it was without jurisdiction over Pasillas' unfair labor practice charge, the determination made on the claims of his co-plaintiffs could not in that

case have been made between Pasillas and defendants alone, and therefore, Cal.Civ. Pro.Code § 1910 does not deem Pasillas to be the "same party" as his co-plaintiffs for claim preclusion purposes. The court finds the California Court of Appeal's decision in *Pasillas* should not be given claim preclusive effect in this action by Pasillas.

▇ The determination by the court of appeals that no state action was implicated by the union shop agreement was not necessary to its decision to affirm the ALRB's dismissal of Pasillas' unfair labor practice charges. Therefore, issue preclusion will not attach to those findings. *See Wilson v. Interlake Steel Co.*, 32 Cal.3d 229, 234, 185 Cal.Rptr. 280, 283, 649 P.2d 922, 925 (1982); *In re Lisa R.*, 13 Cal.3d 636, 647, 119 Cal.Rptr. 475, 482, 532 P.2d 123, 130, *cert. denied*, 421 U.S. 1014, 95 S.Ct. 2421, 44 L.Ed.2d 682 (1975) ("[f]indings which might have been made but which were not necessary to the judgment are not conclusive on the parties...").

In conclusion, this court will not give any res judicata effect to the decision by the California Court of Appeals in *Pasillas v. ALRB*. Although the decision in that case retains the precedential effect of stare decisis, *see United States v. Maine*, 420 U.S. 515, 527, 95 S.Ct. 1155, 1161, 43 L.Ed.2d 363 (1975), that opinion is only persuasive authority on the issues of federal law presented in this action. *See Bittaker v. Enomoto*, 587 F.2d 400, 402 n. 1 (9th Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979).

▇ In *Moses*, the court of appeal denied the petition of plaintiffs George, Michael, and Donald Moses, Beltran, and Salinas for review of the ALRB's decision on their unfair labor practice charges. Because of the summary nature of the court of appeal's judgment, no determination on the merits is necessary to the court's decision to deny review. *See Tex-Cal Land Management, Inc. v. ALRB*, 24 Cal.3d 335, 350–51, 156 Cal.Rptr. 1, 10, 595 P.2d 579, 588 (1979). Therefore, the decision is not entitled to either claim preclusive or issue preclusive effect in this action. *See Miof-*

*sky v. Superior Court*, 703 F.2d 332, 336 (9th Cir.1983) (quoting *People v. Medina*, 6 Cal.3d 484, 491 n. 6, 99 Cal.Rptr. 630, 634 n. 6, 492 P.2d 686, 690 n. 6 (1971)).

▇ Nor can the determination by the ALRB of the constitutionality of § 1153(c) in *U.F.W./Sun Harvest*, 8 ALRB No. 103 (1982) be accorded any res judicata effect. Although in some instances findings of an administrative board may be accorded res judicata effect, *see, e.g., People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982) (giving preclusive effect to Department of Social Services' finding of fact in subsequent criminal prosecution), the ALRB's statements regarding the constitutionality of a California statute went beyond the jurisdiction granted the ALRB by the California legislature, as the ALRB noted in its own decision. *See* Cal. Const. Art. III § 3.5; *Leek v. Washington Unified School District*, 124 Cal.App.3d 43, 53, 177 Cal.Rptr. 196, 202 (1981). Therefore, the court finds the ALRB's dicta concerning the constitutionality of § 1153(c) should not preclude litigation of any issue in this action.

In summary, this court finds that neither the United States Supreme Court's dismissal of the appeal in *Pasillas*, nor the California Court of Appeals decisions in *Pasillas* and *Moses*, nor the ALRB's decision in *U.F.W./Sun Harvest* should preclude litigation by plaintiffs in this action of the issue of the constitutionality of § 1153(c).

### III.

The termination of all pending litigation between the parties in other forums renders moot the arguments presented by the parties urging this court to abstain from decision.

### IV.

▇ Defendants contend there is no constitutional violation because the union shop clause entered into between the UFW and Sun Harvest is a purely private agreement, and is not "fairly attributable to the state." *Lugar v. Edmondson*, 457 U.S.

922, 936–37, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982). If there is state action, however, then the defendants must demonstrate a compelling reason for the broad scope of § 1153(c). *Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637–38, 46 L.Ed.2d 659 (1976); *Kolinske v. Lubbers,* 712 F.2d 471, 474 (D.C.Cir.1983).

On December 8, 1983, this court orally ruled that state action is present in the agreement and its enforcement. A brief discussion of the court's rationale is appropriate at this time.

In *Railway Employers' Department v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), and the Supreme Court cases following it, state action under the Railway Labor Act (RLA) has been analyzed and some light on the state action issue may be gleaned from them. For example, in *Hanson,* the court found the presence of state action in a union security agreement, primarily because the RLA had a preemptive effect on state labor laws: "the federal statute is the source of the power and authority by which any private rights are lost or sacrificed. (citations omitted) The enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates. ..." *Id.* at 232, 76 S.Ct. at 718. Neither *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), nor *Brotherhood of Railway Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), two later cases under the RLA, offer anything to the analysis, since the constitutional issues were not reached by the Court.

While not dispositive of the issue before the Court, the Supreme Court's decision in *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) does contain interesting language. In that case, the Court addressed Michigan legislation allowing an "agency shop" arrangement as to governmental employees. The fact that the employer was the government removed the state action issue, but the court noted that "differences between public—and private-sector collective bargaining simply do not translate into differences in First Amendment rights." *Id.* at 232, 97 S.Ct. at 1798. This was tempered by the Court's statement that "[n]othing in our opinion embraces the 'premise that public employers are under no greater constitutional constraints than their counterparts in the private sector' ... or indicates that private collective-bargaining agreements are, without more, subject to constitutional constraints...." *Id.* at 226 n. 23, 97 S.Ct. at 1795 n. 23 (quoting Powell, J., concurring in judgment).

Most recently, in *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), airline employees contended that the allocation of certain union fees was unconstitutional, as was the rebate plan for their return, as implemented by the union. The Court reached the constitutional issue as to certain of the activities, and found them constitutionally permissible; no state action argument was apparently raised or addressed. While instructive, these cases do not aid this court's resolution of the state action issue under the ALRA. Nor has the Supreme Court ruled on the state action issue with respect to 29 U.S.C. § 158(a)(3), the statutory parallel of California Labor Code § 1153(c). The Ninth Circuit, however, appears to have assumed the presence of state action in this regard in *Seay v. McDonnell Douglas Corporation,* 427 F.2d 996, 1003 (9th Cir.1970), although there is no discussion of the issue in the opinion.

Recently, in *Kolinske v. Lubbers,* 712 F.2d 471 (D.C.Cir.1983), a thorough analysis of state action in the context of § 8(a)(3) of the NLRA was undertaken. The court began by employing the two-step analysis for state action as stated by the Supreme Court in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 2754, 73 L.Ed.2d 482 (1982). That test requires first, that the alleged deprivation must be caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"

and second, that the person responsible for the deprivation "must be a person who may fairly be said to be a state actor." *Id.*

The court in *Kolinske* first noted that approval or acquiescence in the actions of a private party does not justify finding state action. 712 F.2d at 478. However, when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State," then state action will be present. *Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982). In *Kolinske*, an agency shop clause conditioned receipt of strike benefits on participation in the strike itself. The employee sued the union on the ground that he was merely asserting his first amendment right not to participate in the strike, yet wanted to recover benefits paid in to support the strike. The court found that based on the neutrality of the NLRA with respect to such clauses, this acquiescence above could not be the basis of state action. *Id.* at 478. In its essence, it was the court's finding that the collective bargaining agreement, although permitted by the NLRA, could not fairly be said to bear the imprimatur of the state. The *Kolinske* court also felt there was no governmental involvement, and thus the second prong of the test was not met. *Id.* at 479.

However, this case is clearly distinguishable from *Kolinske*. Here the parties are challenging the very statute from which the collective bargaining agreement arose, rather than the collective bargaining agreement itself. While the agreement at issue here has some bearing on the constitutional issue, it seems clear that as drafted, it is well within the parameters of § 1153(c). Plaintiff's challenge is to the scope of the statute itself which allows such agreements to be drawn. The union, when such an agreement is entered into pursuant to § 1153(c), gains virtually unlimited power to control dissenting members through the union by-laws. The only check upon this power is by a "reasonableness" standard which is subject to review by the ALRB, as discussed below. This review, which may

take years, would seem to this court to call the state itself into the role of enforcing the statutory scheme. The state, then, becomes a focal point in determining the scope of the private agreement, because it says whether the union is acting reasonably. This creates enough, it seems, to create the causal link between the state and the action of which plaintiffs complain.

Further, it simply seems that through the enforcement mechanism, the state has become so involved in the UFW's intra-union procedures, as to allow the clause to be attributed to the state. *See e.g., Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357, 95 S.Ct. 449, 456, 457, 42 L.Ed.2d 477 (1974).

Defendants also argue there is no state action because § 1153(c) was merely the codification of existing California common law which permitted union shops in collective bargaining agreements. However, this argument misperceives plaintiffs' allegations. Plaintiffs do not, nor could they, object to a statutory scheme allowing union shops. Rather, they do object to the breadth of the statute and potential control the state, through the statute, gives a union in such a situation. The force of the government lies behind the agreement by virtue of the broad membership portions of § 1153(c). As in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), California power behind the agreement, whether by statute or through common law, provides a basis for state action.

### V.

Turning to the merits of the constitutional claim, defendants must show that § 1153(c), 1) serves a compelling state interest, and 2) does so by the least intrusive means. *Dunn v. Blumstein*, 405 U.S. 330, 335, 343, 92 S.Ct. 995, 999, 1003, 31 L.Ed.2d 274 (1972). This has not been done.

Defendants first argue that the protection of union members' rights are built into 1153(c) because the union rules must be reasonable under 1154(b). Reasonableness

is determined initially by the ALRB, and then through appellate court review. While this does make the argument for constitutionality stronger, the chilling effect on the first amendment rights of members is substantial in that they have no guidelines as to what will finally, after perhaps many years, be deemed reasonable or unreasonable. In short, they are forced to guess, and a wrong guess may cost them their jobs. Such an infringement of protected rights, counseled by the state through enforcement of § 1153(c), is intolerable.

Defendants, in arguing the compelling interest prong of constitutional scrutiny, contend that the union shop provision is necessary due to the plight of agricultural workers. While this court agrees that union shop clauses are legal and perhaps an important way of maintaining union strength and efficacy, it is not a "union shop" clause which is at issue here, but the particular breadth which § 1153(c) allows union shop clauses to take.

Mere union strength and industrial peace are in sufficient goals to justify abridgement of rights which union members hold. The state of California, through this statute, has chosen not to invoke an objective test as that enacted in 29 U.S.C. § 158(a)(3). Rather, California has enacted a scheme that allows the union virtual control over who will be fired, until review may occur. While the NLRA provisions in § 8(a)(3) may not necessarily be the outer limits of constitutionality, the objectivity found in that statute is certainly a less intrusive means than is employed here.

Without showing a compelling need for this subjective approach, and because lesser intrusive means exist, such as detailing to a greater degree the requirements for good standing, the court finds § 1153(c), as drafted, unconstitutional as a violation of rights to free speech and association guaranteed by the first amendment.

IT IS ORDERED that plaintiffs will prepare a proposed order within ten days of entry of this decision.