Robert CALLAS, Petitioner-Plaintiff,

v.

UNITED STATES of America,
Respondent-Defendant.

No. 83 Civ. 9076 (MP).

United States District Court,
S.D. New York.

Feb. 7, 1984.

Robert Callas, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Charles G. LaBella, New York City, for U.S.A.

## MEMORANDUM

MILTON POLLACK, Senior District Judge.

Robert Callas, presently serving a twelve-year prison sentence imposed by this Court on February 18, 1983, following his plea of guilty to one count of armed bank robbery, has filed this *pro se* action which seeks a wide range of relief which he claims is owed to him as a result of alleged breaches of promises which Callas asserts were made to him as part of a plea bargain agreement.

*Factual Background*

Callas asserts that in exchange for his plea of guilty on the bank robbery charge, his providing the government with information concerning one or more criminal fugitives, and his promise to cooperate with federal law enforcement officials in the future, an Assistant United States Attorney and an FBI officer promised the following at a meeting or meetings held in December, 1982: (1) that other counts for armed bank robbery then pending against him before this Court would be dropped; (2) that he would not be prosecuted concerning other crimes discussed at such meeting or meetings as well as other crimes he may have committed as a "Black Liberation Army Member"; and (3) that all information that Callas had provided to the federal authorities, as well as the fact of his cooperation, would be kept absolutely confidential.

According to Callas' complaint, the government has breached its promises by seeking to prosecute him under a federal indictment filed in California on May 17, 1983, charging him with four counts of bank robbery, and by failing to keep the fact and nature of his informant role confidential.

With respect to the alleged breach of confidentiality, Callas specifically alleges that an FBI officer "leaked" information concerning his cooperation by publishing such information in a "semi arrest statement", and that in so doing the government knowingly placed him in great danger of losing life or limb at the hands of other prisoners "in every federal and state and county jail throughout the United States."[1]

Callas' complaint, which he has erroneously styled as a civil action under 42 U.S.C. § 1983, but which the government has treated as a petition for relief pursuant to 28 U.S.C. § 2255, requests, *inter alia,* the following relief: damages in an amount of three million dollars, vacation of the sentence imposed by this court, and immediate induction into the federal Witness Protection Program.

Callas, who had been imprisoned at a federal correctional facility in California following the sentence of this Court, was returned to the Southern District of New York in November, 1983, at his request, ostensibly under Fed.R.Crim.P. 20, in order to enter a plea of guilty before this Court to certain counts of the aforementioned California indictment. It was during his ensuing incarceration in this district that Callas filed the instant action. He has since indicated that he does not wish to

---

1. At a conference held in this Court's chambers on December 22, 1983, at which Callas and his attorney were present, it was alleged that an inmate at a prison in Missouri had somehow received a written account of information supplied to the government by Callas. The govern- ment dismisses this additional accusation that it has disseminated information about Callas' co- operation, stating that the only release of such written account which has occurred was made *directly to Callas* as part of discovery proceed- ings in the pending California prosecution.

plead guilty to the indictment brought in California and has been ordered returned to the Central District of California in order to face the charges contained in the indictment pending there.

Responding to Callas' allegations, the United States asserts that no promises were made to Callas concerning future prosecutions or confidentiality. In so doing, the government relies primarily on the record which was made at the hearing before this Court at which Callas entered his guilty plea, and in particular on the following statements by Callas' defense attorney:

> The understanding reached with the Government is that on the day of sentence the Government would not oppose our motion to dismiss the three open Counts.

> There is another understanding with the Government, your Honor, and as to that I will ask your Honor to seal the record. It is that Mr. Richard has offered his cooperation to the Government; that he has already undergone one interview with two agents and Mr. LaBella and myself and stands ready and available to be interviewed again.

### Merits of the Dispute

It is plain from the above quotation, as well as from the entire record which was carefully developed by the Court at the hearing during which Callas entered his plea of guilty, that the Court was not informed of any agreement whatsoever between the parties concerning future prosecutions in other federal districts.

However, it is arguable, based upon Callas' attorney's explicit request that the record be sealed, that a part of the plea bargain agreement was a promise by the government to keep confidential the fact and nature of Callas' role as an informant. Assuming arguendo that such an agreement was made and breached, and according due weight to the prisoner's allegations that government officials may have unnecessarily endangered his safety by releasing information meant to be kept confidential,

the Court nevertheless must deny the bulk of the relief demanded by Callas.

### Motion to Vacate Sentence

Callas' claim that the circumstances of this case call for a vacature of the sentence imposed by this Court, whether made pursuant to 28 U.S.C. § 2255 or otherwise, is without merit.

█ It is well settled that a motion to vacate sentence may be used only to collaterally attack the validity of a conviction or sentence *as imposed*, and that an attack upon the execution of that sentence, or the physical conditions under which it is being served, may only be made by means of habeas corpus or mandamus in the district of confinement. *McCune v. United States*, 374 F.Supp. 946 (S.D.N.Y.1974) (Canella, J.). Thus, for example, any claim that the present conditions of Callas' confinement are now unsafe and therefore violative of his federal rights must be made in the federal district in which he is now confined.

The only conceivable theory under which Callas' application might be viewed as attacking this Court's *imposition* of sentence is the argument that the government's alleged breach of the plea bargain agreement has operated retroactively to make Callas' plea of guilty involuntary and therefore invalid. *See generally Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (vacating judgment entered upon plea of guilty in case where prosecutor failed to abide by agreement to make no recommendation as to sentence).

█ While it is therefore not unprecedented for a court to vacate a sentence on the ground that the government's breach of a plea agreement has rendered invalid a plea of guilty, in the circumstances of this case—in which Callas' defense attorney took obvious care to place on the record those understandings on which the plea agreement had been reached—the Court holds that Callas may rely only on breaches of *promises evidenced in the record* in seeking to vacate his sentence on a theory of involuntariness. *Cf. Siegel v. State of New York*, 691 F.2d 620 (2d Cir.1982), *cert.*

*denied* —— U.S. ——, 103 S.Ct. 1201, 75 L.Ed.2d 443 (1983) (state's policy of recognizing only on-the-record plea bargains does not violate due process).

■ Since, as set out above, the record establishes that Callas' plea of guilty was made in exchange only for the government's promise not to oppose dismissal of other serious criminal charges then pending against him and, perhaps, a collateral promise to treat Callas' cooperation as confidential, Callas cannot now challenge the validity of his guilty plea by asserting that the later California prosecution represents a breach of the plea bargain agreement.

■ With respect to the alleged breach of a promise of confidentiality, which, as indicated, arguably has a basis in the record made at the plea hearing, the Court finds that even if Callas were able to prove that such a promise was both made and breached, such promise was not of such central importance to Callas' plea of guilty that a breach thereof could possibly operate now to render that plea involuntary or otherwise invalid.

Because Callas' motion to vacate sentence is deficient as a matter of law, and all facts essential to its determination are before the Court, this aspect of his application is denied, without need for any evidentiary hearing. *See Newfield v. United States,* 565 F.2d 203 (2d Cir.1977); Rule 8(a), Rules Governing Proceedings Under 28 U.S.C. § 2255 ("If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.")

*Inclusion in Witness Protection Program*

■ Callas' demand that this Court compel the United States Attorney General to place him immediately in the federal Witness Protection Program in order to shield him from dangers allegedly caused by breached confidences calls for relief which a federal court is without power to provide, at least in the absence of a claim that the United States had ever promised him such protection.

Pursuant to statutory authority, Pub.L. 91–452, Title V, § 501 *et seq.,* 84 Stat. 933 (1970), *reprinted in* 18 U.S.C. prec. § 3481 (Supp.1983), the decision to include an individual in the federal Witness Protection Program is committed to the "broad discretion" of the Attorney General. *Doe v. Civiletti,* 635 F.2d 88, 97 (2d Cir.1980).

In a recent case bearing similarity to the instant case, *Abbott v. Petrovsky,* 717 F.2d 1191 (8th Cir.1983), the Court of Appeals denied a prisoner's demand that he be included in the Witness Protection Program to protect him from physical danger stemming partly from an Assistant United States Attorney's public release of a transcript of a deposition of the prisoner. The prisoner-plaintiff in *Abbott* had asserted that the United States, by releasing the deposition, had become obligated to protect him from the consequences of that action. In rejecting this claim, the court said:

> The Witness Protection Program is authorized by statute, and allows the Attorney General, in his discretion, to protect government witnesses.... Whether or not a witness will be protected under the program is entirely within the Attorney General's discretion.... One cannot receive protection on demand.

Id. at 1192–93.

The government's decision to deny Callas inclusion in the Witness Protection Program can be neither reviewed nor otherwise disturbed.

*Other Civil Relief*

What remains of Callas' action in this Court are his assertions that the United States owes him damages, and perhaps some form of prospective equitable relief, arising from negligence and breaches of promises of confidentiality on the part of federal law enforcement officials. In its memorandum, which is the government's only form of answer in this case, the United States denies that any promises of confidentiality were made to Callas, states that in any event no leak or breach of confidentiality has occurred, and asserts, albeit without support by affidavit or otherwise,

that Callas himself has been the source of endangering publicity.

On the record as it now stands, and reading the allegations of the *pro se* complaint in the light most favorable to Callas, the Court cannot now conclude that there is no triable issue of material fact present with respect to Callas' action.

In this regard, the Court notes that it is not unprecedented for law enforcement officials or their employers to be held liable for damages suffered by persons who are unreasonably left vulnerable to criminal retaliation after having come forward as informants. *See, e.g., Schuster v. City of New York,* 154 N.E.2d 534, 180 N.Y.S.2d 265, 5 N.Y.2d 75 (1958).

By suggesting that Callas' application herein might state an actionable civil claim against the United States, the court is not unwary of the monumental obstacles of law and fact—such as a proffer of proof of breach of a duty owed, causation, and actual damages sufficient to withstand a summary judgment motion, and questions such as sovereign or official immunity—which Callas must surmount if he is to proceed with this action.

Accordingly, the defendant United States is directed to treat what remains of this action as a civil lawsuit for damages and other appropriate relief. In this regard the United States is of course free to make whatever motions—for dismissal, summary judgment, or transfer to a more appropriate forum—as may be called for under the circumstances.

This disposition of this action is without prejudice to any action Callas may choose to bring in the District of his present confinement seeking to enforce his federal rights with respect to the conditions of such confinement.

*Conclusion*

Callas' requests for relief are denied in all respects except for his claim herein for damages or other appropriate civil relief for injuries he has suffered or is continuing to suffer due to alleged breaches of legal duties owed to him by officers of the United States.

SO ORDERED.