OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be affirmed.
 

 On April 16, 1987, a fire, intentionally set, swept through an Albany residence and killed four people in their sleep. Following his arrest for unrelated crimes, defendant told the prosecutor that he had been involved in setting the fire and was willing to cooperate in its investigation. His counsel arranged for him to provide the authorities with written and oral accounts of the crime. Counsel was also present when defendant signed a waiver of immunity from prosecution and relinquished "any * * * privilege against the use against me of any * * * testimony or evidence” in any "inquiry, proceeding, or trial.” In exchange for a sentence promise of
 
 IV2
 
 to 3 years’ imprisonment, defendant agreed to testify before a Grand Jury about the crime and "cooperate fully” in the prosecution of his accomplices. Although its terms are not in dispute, the parties did not seek approval of the plea agreement.
 

 Soon after describing to the Grand Jury how his accomplices had set fire to the house in retaliation for a drug-related debt, defendant appeared on a televised news broadcast and stated that he had lied to the Grand Jury, apologizing to his accomplices. The People, concluding that defendant’s public recantation had "effectively eliminat[ed] his utility and credibility as a prosecution witness,” refused to honor the plea
 
 *864
 
 agreement. Defendant was ultimately convicted of four counts of murder in the second degree and related counts, following a trial at which his Grand Jury testimony was introduced against him.
 

 On appeal, defendant argues that he is entitled to specific performance of the plea agreement because his testimony before the Grand Jury, presented at risk to himself, placed him in a "no return” position, so that he cannot be restored to his preplea agreement status
 
 (see, People v Danny G.,
 
 61 NY2d 169). The Appellate Division rejected this contention, as do we.
 

 In order to promote certainty and openness in the plea negotiation process, we generally withhold judicial recognition from plea bargains not submitted for judicial approval
 
 (People v Danny G,
 
 61 NY2d 169, 173,
 
 supra).
 
 While the fact that a plea agreement was never placed on the record is not always an insurmountable barrier
 
 (Matter of Benjamin S.,
 
 55 NY2d 116, 121), no exception is warranted here.
 

 Specific performance of a plea agreement is a remedy rooted in concerns of "essential fairness”
 
 (People v McConnell,
 
 49 NY2d 340, 349). Unlike the defendants in
 
 McConnell
 
 and
 
 Danny G.,
 
 however (who fully complied with the terms of their plea agreements), here defendant failed to uphold his end of the plea agreement and rendered the agreement valueless to the People. Their subsequent refusal to call him as a witness at the trial of the accomplices was not unreasonable in view of the questionable value of his testimony. We cannot say that essential fairness compels enforcement of the original agreement. The question remains whether the People were nevertheless entitled to use defendant’s own Grand Jury testimony against him at his own trial.
 

 It has long been our rule that evidence of a defendant’s guilty plea cannot be used against him at a criminal trial once the plea has been withdrawn
 
 (People v Spitaleri,
 
 9 NY2d 168). In
 
 People v Moore
 
 (66 NY2d 1028), we observed that statements made during the course of plea negotiations could be used against a defendant only if the People had specifically bargained for that use.
 

 We declined in
 
 People v Evans
 
 (58 NY2d 14) to extend the
 
 Spitaleri
 
 doctrine to preclude use of statements induced by a plea promise. As in defendant’s case, the
 
 Evans
 
 defendant offered to testify against his accomplices with the assistance of counsel and set no conditions on the subsequent use of his
 
 *865
 
 testimony. In that case, neither the prosecution nor the defendant breached the integrity of the agreement. Concluding that defendant had "assumed the risk” that his testimony might subsequently be used against him, we declined to permit "retroactive retraction” of defendant’s testimony, or to "rewrite” the agreement to include a condition the parties could have included but did not
 
 (Evans,
 
 58 NY2d, at 24). We observed the unfairness of permitting the defendant to receive the benefit of the plea agreement while depriving the prosecution of the very benefit it bargained for — use of defendant’s testimony — as well as the loss to the Judge or jury of evidence important "to the truth-finding process.” We therefore held that "each party to the voluntarily entered-into plea agreement is entitled to the benefits emanating from the agreement which cannot be retroactively vitiated”
 
 (id.,
 
 at 24).
 

 The
 
 Spitaleri
 
 doctrine, resting "entirely on fairness grounds”
 
 (People v Evans,
 
 58 NY2d, at 22), does not prevent use of defendant’s statements against him. Defendant’s Grand Jury testimony, like the testimony of the
 
 Evans
 
 defendant, was induced by the plea agreement. In addition, the People bargained for use of defendant’s testimony in the prosecution of his accomplices. The People could not compel defendant’s testimony in service of those prosecutions once they voided the agreement, but they could use the testimony he had already given in any manner they saw fit, as this was a counseled, foreseeable use of his testimony, and a benefit that should not be "retroactively vitiated”
 
 (Evans,
 
 58 NY2d, at 24).
 

 In
 
 Evans,
 
 where both defendant and the People had clean hands, we therefore recognized that both parties would be returned to their preplea agreement positions only as to those aspects of the bargain that remained unperformed. Here, defendant’s own conduct, after he had voluntarily incriminated himself, caused him to lose his benefit of the bargain. While the People were not entitled to gain more pursuant to the agreement, they were permitted to keep what they already had. Accordingly, use of defendant’s Grand Jury testimony against him was permissible.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed in a memorandum.