Trumont WILLIAMS, Petition,

v.

Elliot SPITZER, Attorney General,
State of New York,
Respondent.

No. 02 CIV.0025 (SCH).

United States District Court,
S.D. New York.

Feb. 28, 2003.

Robert S. Dean, New York City (David J. Klem, of counsel), for petitioner.

Robert T. Johnson, Dist. Atty., Bronx, NY (Elizabeth F. Bernhardt, Peter A. Sell, of counsel), for respondent.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Petitioner Trumont Williams, serving a sentence imposed by a New York state court, seeks by this federal habeas corpus action under 28 U.S.C. § 2254 to enforce the state's alleged oral promise that if Williams cooperated with federal and state prosecutors following his guilty plea to murder charges in the state court, the state prosecutors would allow Williams to withdraw that guilty plea and plead in-

stead to the lesser charge of manslaughter, thereby significantly reducing his sentence. After Williams rendered valuable assistance in a federal prosecution of others, the state took the position that, assuming without conceding that such a promise was given, it is unenforceable because not recorded. The state trial court agreed and sentenced Williams on his plea to murder charges. That ruling was upheld on appeal. Having exhausted his right to direct appeal in the state courts, Williams brings this federal habeas petition.

Respondent Elliot L. Spitzer, the Attorney General of the State of New York, opposing Williams' petition, contends that federal habeas relief is not available to Williams as a matter of law because (1) federal habeas review is foreclosed when a state court expressly relies on a state procedural default as an adequate and independent ground for denying petitioner relief, circumstances respondent avers exist in the case at bar; and (2) in any event, Williams' petition is barred by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") since Williams cannot show, as the statute requires, that the state court judgment is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Respondent's second contention, based on the AEDPA, poses the question whether the Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which considered the constitutional due process implications of a prosecutor's promise given to induce an individual to plead guilty, should be extended to the breach of a prosecutor's promise given to induce an individual to cooperate with law enforcement after having pleaded guilty. On that point this appears to be a case of first impression.

## I. BACKGROUND

In 1993 petitioner Trumont Williams belonged to the C & C criminal organization, a violent group that operated in the Williamsburg area of the Bronx. C & C assigned street locations to drug dealers and charged the dealers for "rent" and protection services, which included the murder of rival dealers who did not deal with C & C. A summary of the C & C organization's activities may be found in *United States v. Padilla*, 203 F.3d 156 (2d Cir.2000). Petitioner was a member of C & C's "security" forces and participated in several organization-related murders.

Initially the C & C organization and its members were investigated and charged by the Bronx District Attorney. Petitioner was indicted in the New York State Supreme Court, Bronx County, for a number of murders and attempted murders. Plea negotiations ensued. Eventually petitioner entered into a plea agreement with the state prosecutors. Petitioner promised to provide information and testimony with respect to C & C. In return, the state prosecutors agreed to accept petitioner's plea of guilty to two separate murder charges, to recommend to the state trial court an agreed-upon sentencing range with respect to those two murders, and to forego prosecution of three other murders and two attempted murders for which petitioner had been indicted. Resp. Aff. at 3; Pet. Mem. at 5, A. 1–22.[1]

Consistent with that agreement, petitioner appeared before the state trial court (Martin Marcus, *J.*) on September 29, 1993 and pleaded guilty to two counts of murder

---

1. "A." is a reference to the Appendix which accompanies the petition.

in the second degree. The plea agreement is set forth in the sentencing minutes:

This promised sentence is in exchange for Mr. Williams' full cooperation in the prosecution of any and all matters under investigation now or in the future. Mr. Williams will hold himself available to testify at any stage, in any forum where the prosecution deems it necessary to call him as a witness. Mr. Williams will testify in a truthful, forthright and candid manner whenever he is called to testify.

Pet. Mem. at A. 6. In return for that cooperation, the state prosecutors agreed to recommend two concurrent sentences with minimum terms between 15 and 25 years and a maximum of life imprisonment.[2] The prosecutors further agreed to make known to the sentencing court the extent of petitioner's cooperation pursuant to the agreement. A. 7, 17–19. Petitioner was retained in state custody.

Eventually the depredations of the C & C organization became the subject of a joint federal-state law enforcement task force investigation. A federal indictment charging petitioner and numerous other C & C members under, *inter alia,* the criminal RICO statute was filed in this Court bearing docket number 94 Cr. 313 and assigned to me for trial and related proceedings. In January 1994 petitioner was transferred from state custody to the federal Metropolitan Correctional Center. Federal prosecutors, who were working with state prosecutors designated as special federal assistants in preparing the case for trial, advised petitioner of their desire to obtain his cooperation as well. In support of the present petition, Williams asserts that in the spring of 1994 he learned that he was HIV positive. The shortened life expectancy resulting from this diagnosis caused petitioner to become concerned that he would derive no benefit from his plea agreement with the state, which subjected him to a minimum sentence of 15 years. Petitioner says in an affidavit that "I understood that my life expectancy was reduced substantially," and that "I knew that if I was sentenced to a period of time of somewhere between 15 years and life that I would probably die in prison," A. 33, 34–35, a fate that would come to pass if petitioner pleaded to a federal charge (as the federal prosecutors were insisting that he do) and then had to serve the 15 years to life state sentence to which he had agreed as part of the 1993 state plea bargain. It had also become clear to petitioner by this time that his state case would not be transferred to federal court and folded into a new federal indictment.

In these circumstances, petitioner avers, further discussions took place between petitioner, his federal attorney, federal prosecutors, state prosecutors, and city detectives. Petitioner says in his affidavit:

Before pleading guilty in federal court to racketeering charges, including murder, I talked with the detectives and prosecutors what would happen me [*sic*] and to my state case. In front of federal and state prosecutors and my attorney, I was told by New York City detectives that I should not worry about my Bronx case because it would be taken care of. It was obvious to me that all these people at these discussions were aware that I was being told that I would not get a greater penalty in the Bronx case should I continue my cooperation with the joint federal and state prosecution. . . .

The detectives, the two names that I know of are Bobby Addorato and Ricky,

---

**2.** If petitioner did not fulfill his obligations to cooperate, the plea agreement provided for concurrent sentences with minimum terms of 30 to 50 years and maximum terms of life.

always told me that I would be taking [*sic*] care of and that I would not get "fucked." Mr. Barocas [petitioner's federal attorney] told me that everything should work out and Mr. Cataracchi [a state prosecutor whose name is Shahab Katirachi] regularly assured me that "everything will workout" [*sic*]. When the detectives told me that I would be taken care of and that I would not get "fucked," none of the attorneys, my defense attorney nor the prosecutors, said anything different.

I was told that the way for me to receive less than 15 years to life in the Bronx County would be for my pleas to murder in the second degree to be vacated and for me to be allowed to plea [*sic*] to manslaughter in the first degree. I was explained to this by Mr. Barocas and some of the prosecutors. Since this was the only way not to get a 15 to life sentence, I assumed that the promises made that I would be taken care of and not "fucked" meant that I would be allowed to withdraw my plea to the murder charges and be sentenced after pleading guilty to manslaughter in the first degree.

A. 33–35. These assurances and reassurances were oral. They were neither memorialized nor mentioned in any writing. Petitioner does not contend otherwise.[3]

Petitioner continued his cooperation with the federal prosecutors and the state

prosecutors assisting them. On November 23, 1994, petitioner pleaded guilty to a superseding criminal information in this Court, S6 94 Cr. 313. While petitioner did not testify at the trials generated by the federal C & C indictment, he gave valuable cooperation to the prosecutors. Assistant United States Attorney Margery Feinzig submitted a 5K1.1 letter to me before I sentenced petitioner on his federal plea.[4] She stated that with his inside knowledge of how the organization operated, petitioner had "played an essential role in the Government's investigation and prosecution of the members of C & C"; she credited petitioner's cooperation with leading to the conviction of twenty defendants in all. AUSA Feinzig added that petitioner had provided "valuable information that led to the prosecution of numerous extremely dangerous individuals," and that by doing so, had placed himself "at grave risk." Having come to know members of the C & C organization, I have no trouble believing that assertion.[5]

On January 29, 1997, I sentenced petitioner to a three-year term of imprisonment, followed by five years of supervised release. During the sentencing hearing I recommended (having no power to make an order) that when the state court imposed the state sentence on petitioner, it be made to run concurrently with the federal sentence.[6]

---

**3.** While respondent disputes the accuracy of petitioner's account, *see* A. 106–07, I will assume it to be true for the purpose of considering the legal arguments by which respondent challenges the petition.

**4.** A "5K1.1 letter" is furnished by a federal prosecutor to a sentencing judge pursuant to § 5K1.1 of the United States Sentencing Guidelines. Its purpose is to advise the judge of the nature and value of a defendant's cooperation with law enforcement in the investigation or prosecution of crime. A 5K1.1 letter and the prosecutor's accompanying motion

on the defendant's behalf allows the judge to impose a more lenient sentence than would otherwise be allowed by the Guidelines or the governing penal statute.

**5.** AUSA Fenizig's 5K1.1 letter to this Court is quoted and paraphrased in the state trial court's opinion denying petitioner's pre-sentencing motion. A. 97.

**6.** One purpose of my three-year sentence was to give petitioner jail time credit off his state sentence for the time he had spent in federal

Petitioner was again brought before the state court for sentencing on his initial 1993 plea to the two state murder charges. The state prosecutors refused to consent to petitioner withdrawing his plea to the murder charges and substituting a plea of guilty to manslaughter, stating that they would continue to recommend that the state court impose the minimum 15 year term of imprisonment contemplated by the 1993 plea agreement. Dissatisfied with that response, petitioner moved unsuccessfully in the state trial court for an order permitting him to withdraw his original plea or, in the alternative, for specific enforcement of the state prosecutors' "new promises." Pet. Main Brief at 12. On August 5, 1999 Justice Marcus, accepting the recommendation of the prosecutors, sentenced petitioner to two terms of 15 years to life, to run concurrently with each other and with the previously imposed federal sentence.

The state courts have denied petitioner any post-sentencing relief, in rulings further described in Part II.A., *infra*. This federal habeas petition followed. Petitioner's constitutional claim is that his due process rights were violated when the state trial court refused either to enforce the promise the state prosecutors made to him to induce his continued cooperation with the federal prosecutors, or to permit him to withdraw his state guilty plea. As for relief, petitioner asks this Court to direct the state court "to either (i) specifically enforce the promise by permitting petitioner to withdraw his current plea and to re-plead to first-degree manslaughter with a minimum sentence of no more than 10 years' incarceration; (ii) permit petitioner to withdraw his guilty plea; or (iii)

custody during his cooperation with the federal prosecutors and prior to imposition of the federal sentence. The three-year federal sen-

immediately release petitioner from custody." Main Brief at 29–30.

## II. DISCUSSION

Respondent raises a threshold procedural bar to this habeas petition. He argues that the state courts rested their judgments on an adequate and independent state ground, thereby precluding this Court's consideration of petitioner's federal claim.

■ I must consider this contention first, since in passing upon a habeas corpus petition federal courts are instructed to analyze possible procedural bars before turning to the merits of the federal claim. *See Lambrix v. Singletary*, 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ("Our opinions . . . suggest that the procedural-bar issue should ordinarily be considered first.").

### A. Adequate and Independent State Ground

In *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court held that

an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.

Conversely, a federal claimant's procedural default precludes habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default.

tence contained no credit for prior federal time served. *See* sentencing transcript at 32.

To solve the problem presented by "ambiguous state-court references to state law," the ruling in *Harris* does not bar consideration of a federal claim, on either direct or habeas review, "unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. 1038 (citations and internal quotation marks omitted). Applying and following *Harris*, the Second Circuit has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990).

In the case at bar petitioner, on the basis of the asserted post-plea, off-the-record promise given by state prosecutors to secure his continued cooperation, moved in the state trial court prior to sentencing for dismissal of the indictment in the interest of justice, or in the alternative, for an order permitting him to withdraw his guilty plea. The trial court denied petitioner's motion on the grounds that off-the-record promises relating to plea agreements are not enforceable in New York and, alternatively, that petitioner had not shown he relied on the alleged promise to his detriment. A. 92–111. Following sentencing, petitioner appealed to the Appellate Division, First Department, which became the last state court rendering a judgment in the case. Affirming the trial court, in an opinion reported *sub nom. People v. Anonymous*, 283 A.D.2d 233, 728 N.Y.S.2d 363 (2001), the Appellate Division reasoned:

> Defendant's motion to withdraw his plea was properly denied. The alleged post-plea promise by law enforcement officials that, in return for his continued cooperation, defendant would be permit-ted to withdraw his plea and to replead to a lesser charge is not entitled to judicial recognition since it was never placed on the record or approved by the court (citing New York cases). Moreover, defendant received the lower end of the sentence that had been promised to him, conditioned on his cooperation, and the purported post-plea promise of even further leniency could not have affected the voluntariness of the plea (citing New York cases). We have considered and rejected defendant's remaining arguments.

The New York Court of Appeals denied leave to appeal further. *People v. Anonymous*, 96 N.Y.2d 898, 730 N.Y.S.2d 795, 756 N.E.2d 83 (Ct. App. 2001).

■ Since the Appellate Division's opinion "clearly and expressly" stated that its judgment rested on the state procedural bar denying enforcement to off-the-record prosecutorial promises, cited only New York cases, and made no reference to the due process clause or any other provision of the United States Constitution, habeas review is precluded if that opinion reflects an "adequate and independent" finding of procedural fault, as that phrase is used in *Harris*, 489 U.S. at 262, 109 S.Ct. 1038. The Second Circuit uses the phrase "independent and adequate," *Velasquez*, 898 F.2d at 9, but that reversal of the order of the adjectives would not appear to have analytical significance. The use of two different adjectives, joined by the conjunctive, would seem to suggest that in order to preclude federal habeas review, the state court's judgment must demonstrate two different characteristics. That is to say: the finding of procedural default must, in addition to being clearly and expressly stated by the state court, must also be both "adequate" and "independent." That is clearly the perception of the Second Circuit; see *Garcia v. Lewis*, 188 F.3d

71, 77 (2d Cir.1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground.... Rather, the question in this case is whether the state ground relied upon is 'adequate' to preclude federal habeas review.").

Accordingly it becomes necessary to consider what these two words mean in determining whether the Appellate Division's opinion in this case precludes a federal habeas review by this Court.

**1. "Adequate"**

■ Three situations have been identified in which an otherwise valid state ground is not "adequate" and consequently does not bar assertion of a federal-law claim: "(1) where failure to consider a prisoner's claims will result in a fundamental miscarriage of justice; (2) where the state procedural rule was not firmly established and regularly followed; and (3) where the prisoner had good cause for not following the state procedural rule and was prejudiced by not having done so." *Edwards v. Carpenter,* 529 U.S. 446, 455, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (Breyer, *J.,* concurring). Petitioner at bar invokes the second of these three principles. He argues that the state court's ruling that his "claim could not survive because the [prosecutors'] promises were not placed on the record did not rest on a strictly or regularly followed" New York procedural rule. Reply Brief at 8.

In *Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the Supreme Court said that "the sufficiency of such a [state procedural] rule to limit all review of a constitutional claim itself depends upon the timely exercise of the local power to set procedure."[7] That exercise implies that the procedural rule in ques-

tion will be "firmly established and regularly followed," to reiterate Justice Breyer's phrase in *Edwards.* The *Ford* Court recalled that "[i]n *James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), we held that only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim," and added: "see also *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964) (state procedural rules 'not strictly or regularly followed' may not bar our review)." 498 U.S. at 423–24, 111 S.Ct. 850. "Unless the procedural rule is strictly or regularly followed, a state procedural ground is not adequate." *Wedra v. Lefevre,* 988 F.2d 334, 339 (2d Cir.1993) (citations and internal quotation marks omitted). Such cases reflect the rule that "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982).

This limitation upon the concept of a state procedural rule's "adequacy" for federal-claim preclusion analysis poses a problem for respondent at bar, because New York's requirement that prosecutors' promises be placed on the record to be enforceable is not always followed by the state courts. The cases make that quite clear.

In *People v. Curdgel,* 83 N.Y.2d 862, 611 N.Y.S.2d 827, 634 N.E.2d 199 (Ct.App. 1994), where the defendant sought specific enforcement of a prosecutor's promise of a lenient sentence in exchange for cooperation and testimony against co-defendants, the Court of Appeals acknowledged that "[w]hile the fact that a plea agreement was never placed on the record is *not always*

---

**7.** "Sufficiency" is, of course, synonymous with "adequacy."

*an insurmountable barrier,* no exception is warranted here," given defendant's subsequent conduct which rendered his testimony valueless to the prosecution. *Id.* at 864, 611 N.Y.S.2d 827, 634 N.E.2d 199 (emphasis added). In *Benjamin S. v. Kuriansky,* 55 N.Y.2d 116, 447 N.Y.S.2d 905, 432 N.E.2d 777 (Ct.App.1982), which also held that a claimed off-the-record promise was unenforceable, the Court of Appeals expressed its belief that "the purposes of the plea bargaining process would best be served *in the usual case* by refusing judicial recognition of any off-the-record promise once a record has been made of the terms of the plea agreement." *Id.* at 120–21, 447 N.Y.S.2d 905, 432 N.E.2d 777 (emphasis added).

These emphasized comments by the New York Court of Appeals cannot be dismissed as meaningless musings because, in at least two reported cases, the appellate division has directed evidentiary hearings to determine whether defendants were entitled to enforce off-the-record prosecutorial promises contained in plea agreements. *See People v. Harper,* 152 A.D.2d 469, 543 N.Y.S.2d 452 (1989) ("Failure of a prosecutor to honor an off-the-record promise as to a sentence recommendation renders invalid a guilty plea

which was induced by such promise."); *People v. Douglas,* 135 A.D.2d 435, 522 N.Y.S.2d 856 (1987) ("If these defendants were in fact the recipients of an actual promise made by the People, and they fully performed their part of the bargain, they were entitled to rely upon it, and such a promise must be fulfilled.").[8] These are ringing appellate declarations of a judicial determination to enforce a prosecutor's promise even though it was not placed on the record.

I recognize that in *Wedra v. Lefevre,* 988 F.2d at 340, the Second Circuit cautioned that "an allegedly uneven application of state procedural default rules *in general* dos not necessarily establish that the application of a procedural default rule in a particular case is not 'adequate' " (citations and internal quotation marks omitted), and went on to say:

> We are not convinced that simply because New York law allows some discretion to be exercised in the granting of extensions that a dismissal on the basis of untimeliness does not constitute an adequate procedural bar. Adequacy only requires application of the rule evenhandedly to all "similar claims." (cit-

---

**8.** The circumstances of *Douglas* are reminiscent of those in the case at bar. A violent and murderous drug gang operated in the federal District of Connecticut. A number of members, including the moving defendants, Douglas and Kachulis, were indicted by the United States Attorney for that District. Douglas and Kachulis were charged, *inter alia,* with having participated with others in the kidnapping of two gang members from Connecticut to the Bronx, where one was murdered and the other managed to escape. That conduct gave rise to a prosecution in Bronx County for murder and attempted murder. Douglas and Kachulis entered into a cooperation and plea agreement with the United States Attorney in Connecticut, "cooperated fully with the authorities and furnished vital testimony against their former confederates." 135 A.D.2d at

436, 522 N.Y.S.2d 856. They were then tried and convicted in Bronx County, and sentenced to terms of imprisonment to run consecutively to the federal sentences imposed following their federal pleas. Douglas and Kachulis alleged that in the course of their negotiations with the Connecticut federal prosecutors before the federal trial, "they were assured by the Assistant Bronx County District Attorney in charge ... that whatever sentence they received would run concurrently with the federal sentences." *Id.* It was that off-the-record promise that Douglas and Kachulis sought to enforce; the appellate division concluded that "[o]n this record, defendants have clearly made a showing sufficient to entitle them to a hearing on their allegations." *Id.* at 439, 522 N.Y.S.2d 856 (citation omitted).

ing and quoting *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824).

However, *Wedra* turned upon a legislative rule of procedure specifying the time within which an appeal from a denial of a motion to vacate a conviction must be filed. It is one thing to say that the existence of some judicial discretion in its application does not keep such a rule from being a "rule" for habeas-adequacy analysis. It is quite another when judges create a "rule" (more accurately, a policy preference) that prosecutors' promises must be recorded to be enforceable, and then do not hesitate, in cases such as *Harper* and *Douglas,* to disregard that policy in the name of fairness.

■ Given this array of quoted pronouncements by New York state judges, I am unable to find that the off-the-record plea agreement procedural policy constitutes a "firmly established and regularly followed state practice" to which New York courts adhere "strictly." The most that can be said is that off-the-record prosecutorial promises are unenforceable in the "usual" case as a matter of plea bargaining policy, but that barrier to enforcement is not insurmountable, as the *Harper* and *Douglas* cases show. Whether or not to apply the policy and bar enforcement of a prosecutor's off-the-record promise to a defendant would appear to depend in New York upon a case-by-case analysis of the particular circumstances, with the guiding principle being one of fairness. Judges can and do disagree about what is fair. Under the Supreme Court cases cited *supra,* I conclude that this is not a state procedural rule adequate or sufficient to

preclude federal habeas consideration of petitioner's constitutional claim.[9]

### 2. "Independent"

Secondly, petitioner contends that New York's off-the-record procedural rule is not "independent" because it is "interwoven with federal law," Reply Brief at 9, and consequently cannot preclude federal habeas review. The Supreme Court used the quoted phrase in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), while addressing the related but different question of how a federal habeas court discerns the rationale of the state court decision urged as a bar to habeas review. The Court said:

> Respect for the independence of state courts, as well as avoidance of rendering advisory opinions, have been the cornerstones of this Court's refusal to decide cases where there is an adequate and independent state ground.... [W]hen, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be *interwoven with the federal law,* and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.... If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision.

Id. at 1040–41, 103 S.Ct. 3469 (emphasis added). The state court decision in *Michigan v. Long,* which considered the consti-

---

9. In view of that conclusion, I need not reach petitioner's second contention with respect to adequacy, that the off-the-record rule has never been applied to post-plea prosecutorial promises, as opposed to "promises made at the time of the entry of the original plea that were purposefully withheld from the judge." Reply Brief at 9.

tutionality of a police officer's search of car's passenger compartment during a lawful investigatory stop of its occupant, fell within the first of these two categories, thereby allowing federal review, because "[a]part from its two citations to the State Constitution, the [state] court below relied *exclusively* on its understanding of *Terry* and other federal cases. Not a single state case was cited to support the state court's holding that the search of the passenger compartment was unconstitutional." *Id.* at 1043, 103 S.Ct. 3469 (footnotes omitted). In the case at bar, the Appellate Division's opinion does not fall within that category because it relied solely upon decisions of the New York courts.

■ Nonetheless, the Court in *Michigan v. Long,* 463 U.S. at 1038 n. 4, 103 S.Ct. 3469, collected other cases whose circumstances allowed federal review of a state court decision because that court's basis of decision was not independent of the applicable federal constitutional rule. One of those cases also sounds the "interwoven" theme. Specifically, the *Michigan* Court cited and quoted *Enterprise Irrigation District v. Farmers' Mutual Canal Co.,* 243 U.S. 157, 164, 37 S.Ct. 318, 61 L.Ed. 644 (1917), for the proposition that "where the non-federal ground is so interwoven with the [federal] ground as not to be an independent matter, or is not of sufficient breadth to sustain the judgment without any decision of the other, our jurisdiction is plain." *Id.*

■ This concept of "interwoven" grounds focuses upon the nature of the federal issue a litigant seeks to assert, rather than (as in *Michigan v. Long* ) upon the grounds articulated by the state court for its decision. Typically, in this category of case, a state procedural ground is held to bar federal review of the merits of a federal claim when the state procedural ground and the federal issue are separate and distinct from each other. *See, e.g., Garcia v. Lewis,* 188 F.3d 71 (2d Cir.1999) (state procedural rule requiring contemporaneous objection at trial existed independently of petitioner's federal claim that his Sixth Amendment right to a public trial was violated because his mother's companion was excluded from the courtroom during the testimony of the undercover officer to whom petitioner allegedly sold drugs); *Wedra v. Lefevre,* 988 F.2d 334 (2d Cir. 1993) (state procedural rule requiring timely appeal from denial of post-trial motion to vacate conviction existed independently of petitioner's federal claim that his Sixth Amendment rights were violated by reason of ineffectual representation by trial counsel and prosecutorial misconduct). In such cases, a habeas review of the merits of the federal claim is not warranted because the decision of the state courts on the state grounds would not be changed by a ruling on the federal issue. In *Garcia,* a federal court could find merit in petitioner's Sixth Amendment claim; nonetheless, the claim would be barred by the state contemporaneous objection rule. In *Wedra,* a federal court could find merit in petitioner's Sixth Amendment claims; nonetheless, the claim would be barred by the state timely appeal rule.

■ The case at bar is different because Williams claims that the judge-made off-the-record rule as applied to him is itself an unconstitutional deprivation of due process. He argues that "by failing to hold the prosecution to the promises it had made as part of the continuing plea negotiations, even though petitioner's continued cooperation was based on those promises, the state courts' decisions were contrary to and an unreasonable application of the constitutional standard laid out by the United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)." Main Brief at 23–

24. Thus the state procedural rule and the federal issue are not separate and distinct from each other; they are joined at the hip; they occupy the same conceptual territory. If petitioner succeeds on his constitutional due process claim, the state off-the-record rule cannot operate to preserve the result reached by the state courts; on the contrary, such a resolution of the federal issue would necessarily preclude the rule's unconstitutional application to petitioner. Thus the case at bar falls within the Supreme Court's holding in *Enterprise Irrigation District*, 243 U.S. at 164, 37 S.Ct. 318, that federal jurisdiction is "plain" when "the non-federal ground is so interwoven with the federal ground as not to be an independent matter, or is not of sufficient breadth to sustain the judgment without any decision of the other."

For the foregoing reasons, I conclude that (1) the New York state courts' policy that in "the usual case" prosecutorial promises be on the record to be enforceable is not an "adequate" ground to preclude federal habeas review of petitioner's constitutional due process claim, and (2) the off-the-record rule as applied to petitioner is not "independent" of the federal issue he seeks to raise by this petition.

Accordingly I turn to the merits of Williams' constitutional claim that the state court's refusal to enforce the state prosecutors' off-the-record promise violated his right to due process.

### B. Petitioner's Constitutional Claim

The AEDPA revised and narrowed the conditions under which federal courts may grant habeas relief to a person in state custody. 28 U.S.C. § 2254. "[W]ith respect to any claim that was adjudicated on the merits in State court proceedings," the AEDPA provides that an application for a writ of habeas corpus may be granted only if (1) the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d). The state court's decision in this case did not turn upon any factual determinations; the court denied petitioner relief solely as a matter of law. Consequently, this Court may grant the writ only if the New York Appellate Division's decision was contrary to or an unreasonable application of federal law clearly established by Supreme Court decisions. *See Kruelski v. Connecticut Superior Court*, 316 F.3d 103, 105 (2d Cir.2003).

■ Petitioner at bar preserves in a footnote the argument that since the Appellate Division failed to address the federal nature of his claim, there was no "adjudicat[ion] on the merits" under § 2254(d) and the pre-AEDPA standards must apply. Main Brief at 21 n. 21. However, as petitioner recognizes in that footnote, the Second Circuit squarely rejected that argument in *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001):

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

That holding is of course binding upon this Court. The petition at bar must accordingly be evaluated by the AEDPA standards.

In *Williams v. Taylor*, 529 U.S. 362, 402–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court undertook to define § 2254(d)'s core phrases in Part II of the opinion, written for the Court by Justice O'Connor. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405–06, 120 S.Ct. 1495. "[A] state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495.[10] Justice O'Connor added: "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Id.* at 409, 120 S.Ct. 1495. It follows that habeas relief may not be granted on the ground that the habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.

With all due respect, it is easy enough to say that such propositions are "stated simply," but the generalized definitions in *Williams v. Taylor* could not be expected to banish all uncertainty from all cases; nor have they done so. In *Francis S. v. Stone*, 221 F.3d 100, 109 (2d Cir.2000), the Second Circuit found the "unreasonable application" phrase "more troublesome" to interpret than "contrary to" or "clearly established," and said of it:

"As an abstract proposition, we can only echo Justice O'Connor's virtually tautological statement that to permit habeas relief under the "unreasonable application" phrase, a state court decision must be not only erroneous but also unreasonable. Some increment of incorrectness beyond error is required. We caution, however, that the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence. We do not believe AEDPA restricted federal habeas corpus to that extent."

*Id.* at 111. More recently, the Second Circuit has said that the validity of a state court adjudication under § 2254(d) depends upon whether it "is clearly within the bounds of the permissible" under the pertinent Supreme Court cases. *Kruelski*, 316 F.3d 103 at 111 (rejecting constitutional claim based upon Double Jeopardy Clause).

I come now to *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), upon which petitioner bases his claim that the state prosecutors' breach of their promises given to induce petitioner's cooperation violated his constitutional right to due process.

---

10. The *Williams* Court adopted these two interpretations of "unreasonable application" from the Fourth Circuit's opinion in *Green v. French*, 143 F.3d 865 (1998), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999), which *Williams* praised as "generally correct." 529 U.S. at 407, 120 S.Ct. 1495. The second of them calls to mind the General Confession in the Book of Common Prayer: "We have left undone those things which we ought to have done; and we have done those things which we ought not to have done."

In *Santobello,* the State of New York indicted the defendant on two felony counts. Plea negotiations ensued. The state prosecutor agreed to permit defendant to plead guilty to a lesser-included offense, carrying a maximum prison sentence of one year, and promised to make no recommendation as to the sentence. No record was made of that promise. At the sentencing a different prosecutor represented the state. He knew nothing of his predecessor's promise to defendant, found no record of it, and recommended that the trial judge impose the maximum sentence, which the judge did. The state appellate courts upheld the conviction and the sentence. The Supreme Court granted certiorari.

The state conceded "that the promise to abstain from a recommendation was made," 404 U.S. at 262, 92 S.Ct. 495, and the Court granted petitioner habeas relief, observing that "[t]he disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons," and going on to hold:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Id.*[11]

It is essential to the Court's holding in *Santobello* that the prosecutor's promise induced the plea. That is made manifest by the Court's subsequent decision in *Mabry v. Johnson,* 467 U.S. 504, 510, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) ("Respondent's plea was in no sense induced by the prosecutor's withdrawn offer; unlike Santobello, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, at the time respondent pleaded guilty he knew the prosecution would recommend a 21–year consecutive sentence.").

Petitioner at bar contends—and at this stage of the proceeding I am bound to accept—that the state prosecutors' promises induced him to continue his cooperation with federal and state prosecutors leading up to the case tried before me; and we know from AUSA Feinzig's 5K1.1 letter that his cooperation was of great value to law enforcement and placed petitioner's life at risk.

█ The core of petitioner's AEDPA argument is that the state court "unreasonably refuse[d] to extend" the "legal principle" the Supreme Court articulated in the induced guilty plea context of *Santobello*

---

11. The Court unanimously held that Santobello was entitled to habeas relief, but disagreed about what relief was appropriate. Chief Justice Burger's opinion for a 6–3 majority on that issue remanded the case to the state courts, which would choose between requiring "only that there be specific performance of the agreement on the plea," resulting in a resentencing by a different judge, or "granting the relief sought by the petitioner, *i.e.,* the opportunity to withdraw his plea of guilty." 404 U.S. at 262–63, 92 S.Ct. 495. Justice Douglas, concurring, expressed the view that in choosing a remedy, "a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Id.* at 267, 92 S.Ct. 495. Justice Marshall, joined by Justices Brennan and Stewart, said in dissent that the case should be remanded "with instructions that the plea be vacated and petitioner given an opportunity to replead to the original charges in the indictment." *Id.* at 269, 92 S.Ct. 495.

to the "new context" of induced cooperation with prosecutors. *Williams,* 529 U.S. at 407, 120 S.Ct. 1495. "It is this standard," petitioner says in his Reply Brief at 12, "that petitioner maintains most clearly applies to his case." Petitioner must perforce argue for that extension of the *Santobello* principle that a prosecutor's promise "must be fulfilled," since the Supreme Court has never considered a prosecutor's promise given to induce a defendant's cooperation. The decisive issue before this Court is whether reason requires that the principle declared in *Santobello* be extended to that new context. I must engage in the review recently described by the Second Circuit in *Kennaugh v. Miller,* 289 F.3d 36, 45 (2d Cir.2002): "We believe that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." That is the review recently contemplated by the Supreme Court in *Ramdass v. Angelone,* 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000) ("A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.").[12]

 As the first step in that analysis, I conclude that a criminal defendant's constitutional due process right articulated in

12. The AEDPA's explicit designation of Supreme Court decisions as the sole determinant of "clearly established Federal law" undoubtedly explains why the parties' briefs neither cite nor discuss a Second Circuit case which one would otherwise expect to receive prominent mention: *Siegel v. State of New York,* 691 F.2d 620 (2d Cir.1982). As Judge Sand explained in *Todd v. Senkowski,* No. 98 Civ. 7025, 1999 WL 335813, at *4 (S.D.N.Y. May 24, 1999),, after the Supreme Court decided *Santobello* in 1971 "the New York Court of Appeals moved toward a rule that barred enforcement of any off-the-record plea agreements except in exceptional circumstances." In *Siegel,* decided in 1982, a divided panel of the Second Circuit considered a habeas petition brought by a state inmate based on a breach of prosecutor's off-the-record promise. The majority, citing New York cases, analogized the off-the-record rule to "a 'statute of frauds' rule for plea bargaining," and held that it did not violate federal due process, reasoning that "[i]n view of the salutary policies fostered by the New York rule, we cannot conclude that it offends the constitutional concept of due process." 691 F.2d at 625. Judge Pratt, dissenting, said that "[d]esirable as it might be from the point of view of administering criminal cases in the state courts, I do not believe that the 'statute of frauds' rule adopted by the New York State Court of Appeals and approved by the majority is permissible under *Santobello v.*

*New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)." *Id.* at 627. Pre–AEDPA cases in the circuit have cited and followed *Siegel: see United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 914 (2d Cir.1990) (habeas petitioner's reliance on *Santobello* rejected because "neither New York law nor federal due process requires prosecutor to fulfill off-the-record promise made in plea bargaining negotiations"); *Callas v. United States,* 578 F.Supp. 1390, 1393 (S.D.N.Y.1984) ("state's policy of recognizing only on-the-record plea bargains does not violate due process."); *Todd v. Senkowski, supra; White v. Keane,* No. 00 Civ. 6202, 2001 WL 699053, at *3 (S.D.N.Y. June 21, 2001), ("[I]t is well settled in this Circuit that federal due process does not require a state prosecutor to honor an off-the-record promise made in exchange for a plea."). *White v. Keane* was decided after the passage of the AEDPA, but Judge Buchwald found it unnecessary to choose between "the AEDPA or pre-AEDPA standards of review" because in any event the proof showed that state prosecutor had kept his promise; the petition failed for that reason. *Id.* at *2–3.

Since Congress provided in the AEDPA that habeas courts may now look only to Supreme Court decisions as declarative of established federal law, it seems to me that I am not only at liberty to disregard the Second Circuit's

*Santobello* renders impermissible the New York judge-made rule that prosecutors' promises must be placed on the record to be enforceable. Of course, New York's off-the-record rule was not before the Court in *Santobello;* the state courts developed the rule after *Santobello* was decided, possibly motivated by a desire to avoid that case's effect. But the Court's language in *Santobello* is crystal clear and broadly stated: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Must be fulfilled!* The Court did not add "unless the promise was oral," or "unless the prosecutor had his fingers crossed behind his back." [13]

■ As the second step in that analysis, I conclude that reason and common sense require the extension of the due process principle declared in *Santobello,* in the context of a prosecutor's promise given to induce a guilty plea, to the present context of a prosecutor's promise given to induce cooperation with law enforcement. There is no principled difference between the two. The Court said in *Santobello* that a prosecutor's promise "must be fulfilled" when "a plea rests in any significant de-

gree on a promise or agreement of the prosecutor, so that it can be said to be *part of the inducement or consideration"* (*emphasis added*). This is the language of contract, which is unsurprising; it has long been the rule in the Second Circuit that courts review plea agreements "in accordance with principles of contract law." *United States v. Riera,* 298 F.3d 128, 133 (2d Cir.2002). In the plea context, the prosecutor's promise is the consideration given to induce the defendant to plead guilty; if the defendant pleads, *Santobello* holds the prosecutor to his promise. In the cooperation context, the prosecutor's promise is the consideration given to induce the defendant to cooperate with law enforcement; if the defendant cooperates (sometimes risking his life, as this petitioner did), what legal principle, what concept of fairness, what distinction founded in reason, relieves the prosecutor of his promise? I am unable to discern any, and therefore extend the principle of *Santobello* to the case at bar.[14]

■ Accordingly I conclude that if the state prosecutors gave petitioner Trumont Williams the promises and assurances he alleges, petitioner's constitutional right to due process was violated, and he is entitled to appropriate relief.

---

due process holding in *Siegel,* I am affirmatively commanded to do so: a heady sensation for a district judge suitably trained in obedience. The function of a district judge under the AEDPA, as I conceive it, is to decide whether holdings of the Supreme Court, and the Supreme Court alone, clearly establish federal law conferring constitutional rights upon a habeas petitioner in the particular circumstances of the case. The district judge's decision is, of course, subject to review by the court of appeals, whose analysis is also limited by the AEDPA to pronouncements of the Supreme Court.

For the reasons stated in text, I conclude (as did Judge Pratt in *Siegel)* that the New York courts' policy of refusing to enforce off-the-record prosecutorial promises is not per-

missible under the Supreme Court's decision in *Santobello.* The decisive question, as also noted in text, is whether that principle should be extended from the plea-inducing context to the cooperation-inducing context.

13. One should not lose sight of the fact that, as demonstrated in Part II.A.1., New York courts have not hesitated in appropriate circumstances to enforce a prosecutor's promise even though made off the record.

14. In the words of the Second Circuit's recent pronouncement, the state court's failure to extend the principle of *Santobello* to the case at bar is not "within the bounds of the permissible" under *Santobello. Kruelski,* 316 F.3d at 111.

## C. Further Proceedings

While petitioner suggests a number of alternative forms of relief, he is entitled to no relief unless he can prove the existence of the prosecutor's promises that he alleges. It would be premature to consider the question of remedy at this time.

An evidentiary hearing is necessary to resolve this controlling issue of fact. That hearing will begin at 10:00 a.m. on June 2, 2003, in Room 17C, 500 Pearl Street, and continue from day to day until completed. I give counsel this amount of notice so that they may arrange their schedules; this date should be regarded as firm, and counsel must regard themselves as engaged before this Court.

A conference will be held in Room 17C on March 7, 2003 at 10:30 a.m. to consider any further procedural questions.

It is SO ORDERED.